# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-2114

Purpose Built Families Foundation., Inc., Petitioner,

v.

Denis McDonough,
Secretary of Veterans Affairs, Respondent.

Before GREENBERG, ALLEN, and LAURER, *Judges.*

## O R D E R

ALLEN, *Judge*, filed the opinion of the Court.

Pending before the Court is Purpose Built Families Foundation, Inc.'s (PBFF's) petition for extraordinary relief in the nature of a writ of mandamus and accompanying motion to stay certain administrative actions. Specifically, petitioner asks this Court to issue an order converting VA's temporary voluntary stay of petitioner's Supportive Services for Veteran Families (SSVF) grant terminations into an involuntary stay pending appeal, i.e., an involuntary stay effective until all litigation concerning the SSVF grant termination has been finally resolved. After careful consideration, and for reasons we will explain below, (1) we conclude that, under appropriate circumstances, the Court has the authority to provide the type of relief petitioner seeks—that is, a stay of administrative action pending appeal, but (2) after considering the merits of petitioner's request, we will deny petitioner the relief it seeks because petitioner has not demonstrated that the Court should stay the actions at issue in this case.

We'll begin with a brief general introduction to the SSVF program, a program the Court has not had occasion to address before. We will also lay out the complicated procedural history surrounding the termination of petitioner's grants. Next, we will explain why the Court has the authority, in appropriate circumstances, to enter a stay of administrative action pending an appeal under the All Writs Act (AWA). We will also explain the standard under which the Court determines whether a stay of administrative action is warranted. Finally, we explain why petitioner is not entitled to the relief it seeks. Specifically, petitioner has failed to show that it is likely to succeed in its administrative appeal of the termination of the SSVF grants at issue.

## I. SSVF OVERVIEW

In October 2008, Congress passed the Veterans' Mental Health and Other Care Improvements Act (the Act). Under section 604 of the Act, VA was authorized to facilitate providing supportive services for "very low-income veteran families in permanent housing."[1]

---

[1] Veterans' Mental Health and Other Care Improvements Act of 2008, Pub. L. No. 110-387, § 604, 122 Stat. 4110, 4132-36 (2008) (codified 38 U.S.C. § 2044).

SSVF grants are awarded to selected private nonprofit organizations and consumer cooperatives (grantees) to assist very low-income veterans' families that are residing in or transitioning to permanent housing.[2] Grantees provide a range of supportive services that are meant to promote housing stability, including outreach services, case management services, assistance in obtaining VA benefits, or assistance in obtaining and coordinating other public benefits.[3]

VA implemented the SSVF program by promulgating 38 C.F.R. part 62.[4] These regulations establish the terms and conditions of SSVF grant awards and outline the requirements SSVF grantees must meet to receive, maintain, and renew SSVF grants. The regulatory scheme also establishes the procedure for terminating or withholding grants.[5] In addition to VA's promulgated regulations, the SSVF program must comply with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards under 2 C.F.R. part 200.[6]

## II. BACKGROUND AND PROCEDURAL HISTORY

PBFF is a nonprofit organization located in Broward County, Florida. It is the grantee for three grants from the SSVF program.[7] In November 2021, the VA Office of Business Oversight (OBO) began conducting an onsite audit in connection with PBFF's grants.[8] The audit identified 276 expenditures that reflected questionable costs totaling $955,710.40.[9] Following these audit findings, in May 2022, VA's SSVF Program Office sent a letter to PBFF notifying it that VA would terminate its 3 SSVF grants in 7 days.[10] PBFF immediately filed suit in the U.S. District Court for the Southern District of Florida (district court or Southern District of Florida), seeking to enjoin VA from terminating the SSVF grants.[11] On May 18, 2022, the district court granted a temporary

---

[2] 38 U.S.C. § 2044; 38 C.F.R. § 62.10 (2023).

[3] *See* 38 C.F.R. §§ 62.30-.33 (2023).

[4] 38 C.F.R. § 62.10.

[5] *See* 38 C.F.R. § 62.80 (2023).

[6] 38 C.F.R. § 62.70(a) (2023).

[7] Petition (Pet.) Exhibit (Ex.) at 1; *see* Motion to Stay (Mot.) at 6. Petitioner's SSVF grant is in the second year of a 3-year contract. Oral Argument (OA) at 56:25-:48, *Purpose Built Families Found., Inc. v. McDonough*, U.S. Vet. App. No. 23-2114 (oral argument held June 13, 2023), https://www.youtube.com/watch?v=dXGUA0EYw3o.

[8] Mot. at 6. According to VA's website, the OBO "is broadly charged with ensuring transparency, accountability and proper stewardship of taxpayer dollars through oversight of VA's financial management internal controls. More specifically, OBO conducts targeted reviews and assessments of internal controls to ensure compliance with applicable laws and regulations; provides guidance to grant program offices; and ensures audit readiness due to changes in processes, technologies and controls." Office of Business Oversight, DEP'T OF VETERANS AFFAIRS, https://department.va.gov/administrations-and-offices/management/business-oversight/ (last visited Aug. 25, 2023).

[9] Pet. Ex. at 2.

[10] Mot. at 7.

[11] *Id.* The Secretary did not argue that the Southern District of Florida lacked jurisdiction over the case based on the provisions of the Veterans Judicial Review Act, and the district court did not independently address that question. *See Purpose Built Families Found., Inc. v. United States*, case no. 22-cv-60938, 2022 U.S. Dist. LEXIS 186185 (S.D. Fla. Oct. 6, 2022). We express no views about that matter.

restraining order (TRO) preventing VA from terminating the grants.[12] The parties later agreed to extend the TRO until June 2, 2022.[13]

On May 19, 2022, VA informed PBFF of its intent to withdraw the May 2022 termination letter and to provide PBFF an opportunity to submit written responses to OBO's audit.[14] VA informed PBFF that after review of the responses, it would issue a final decision concerning the SSVF grants.[15] After withdrawing its May 2022 termination letter, VA moved the district court to dismiss PBFF's action, a motion the district court ultimately granted on the grounds that the action was moot given the withdrawal of the termination notice.[16] PBFF appealed the dismissal to the U.S. Court of Appeals for the Eleventh Circuit (Eleventh Circuit), where the proceeding remains pending.[17]

In February 2023, OBO issued a revised audit that considered PBFF's response.[18] After review, OBO cleared 31 questionable costs it had originally identified, totaling $80,348.48.[19] However, OBO continued to question the bulk of the expenditures it had originally determined to be questionable. Specifically, OBO stated that "245 exceptions remained with unallowable costs totaling $875,361.92, which amounts to 85% of PBFF's costs being considered questionable."[20] Thereafter, in a March 9, 2023, letter, VA's SSVF Program Office notified PBFF of its renewed intent to terminate PBFF's three SSVF grants.[21] The letter informed petitioner that the SSVF Program Office determined (1) PBFF had violated the terms and conditions of the SSVF awards, (2) PBFF's noncompliance could not be remedied by imposing additional conditions, and (3) that termination of the grants would be effective 7 days after the date of the letter.[22] In addition, the March 2023 termination letter told petitioner that if it disagreed with the termination decision it could appeal to the Board.[23]

---

[12] Mot. at 8.

[13] *Id.*

[14] Mot. at 9; Pet. Ex. at 2.

[15] Mot. at 9.

[16] *See Purpose Built Families Found., Inc.*, 2022 U.S. Dist. LEXIS 186185; *see also* Secretary's Response (Resp.) at 3.

[17] *See Purpose Built Families Found., Inc.*, 2022 U.S. Dist. LEXIS 186185, appeal docketed No 22-14057. Petitioner's appeal in the Eleventh Circuit proceeding does not affect the resolution of the matter before us. Both parties agree that it was proper for petitioner to appeal its grant termination to the Board of Veterans' Appeals (Board). *See* Mot. at 3-4; Secretary's Resp. at 4 n.6; Pet. Ex. at 7. And as we will explain, we have authority under appropriate circumstances to stay administrative action pending appeal, in part because the relief sought to be corrected by mandamus is in aid of our prospective jurisdiction. *See Love v. McDonough*, 35 Vet.App. 336, 341 (2022).

[18] *See* Pet. Ex. at 14-40. As we note below, for reasons we do not understand, PBFF did not submit its response to the audit in connection with either its petition or motion. *See generally* Pet. Ex.

[19] *Id.* at 2.

[20] *Id.*

[21] *Id.* at 1. VA also terminated two grants it had awarded to PBFF through VA's Homeless Providers Grant and Per Diem Program, but those terminations are not currently before the Court. *See* Mot. at 3 n.1; Secretary's Resp. at 2 n.3.

[22] Pet. Ex. at 7.

[23] *Id.* at 12-13.

Before termination became effective, VA (acting through the Office of the United States Attorney for the Southern District of Florida) and petitioner entered into a voluntary agreement, under which VA agreed to temporarily stay the grant terminations if petitioner appealed the termination to the Board and sought an involuntary stay pending appeal with the Board or this Court.[24] On April 7, 2023, petitioner filed an appeal at the Board challenging the termination of its SSVF grants, and also filed a motion requesting that the Board stay the grant terminations pending appeal.[25] On April 10, 2023, petitioner filed the petition for extraordinary relief with the Court before us today, seeking a stay of the SSVF grant terminations pending appeal.[26] Petitioner also filed a motion with the Court seeking a stay pending appeal.[27] The petition and motion effectively seek the same relief, so both will succeed, or fail, together.

On May 12, 2023, this case was submitted to a panel of the Court, and we heard oral argument on June 13, 2023. After oral argument, the Court ordered the parties to provide additional information to assist us in resolving this matter. Among other things, the Court ordered the Secretary to submit a declaration from an appropriate Board official informing the Court whether the Board had authority to grant petitioner's motion to stay terminations pending appeal, and if so, under what procedure the Board intended to address the motion.[28]

On June 29, 2023, the Secretary filed a declaration from Anthony C. Scire, Jr., the Board's chief counsel. Mr. Scire informed the Court that on June 28, 2023, the Board sent a letter to petitioner stating that the Board "cannot consider the motion for stay on the merits because [the Board] does not have the authority to grant the relief sought."[29] The Board further informed petitioner that it would "not address the merits of the request to involuntarily stay the termination of SSVF grants awarded to PBFF while its appeal of VA's decision to terminate those grants is pending."[30]

### III. PARTIES' ARGUMENTS

Petitioner contends that the Court has the authority to impose a stay of VA's termination of the three SSVF grants pending completion of petitioner's appeal of those terminations.[31] In addition to the AWA under which the petition was filed, petitioner relies on Rule 8 of this Court's Rules of Practice and Procedure, 5 U.S.C. § 705, and *Scripps-Howard Radio, Inc. v. FCC*, 316

---

[24] Mot. at 11; Secretary's Resp. at 4; Secretary's Resp. to June 15, 2023, U.S. Vet. App. Order, No. 23-2114, at 3. VA's March 2023 termination letter also informed petitioner of its appellate rights. *See* Pet. Ex. at 12-13.

[25] Secretary's Resp. at 4; Petitioner's Resp. to June 28, 2023, U.S. Vet. App. Order, No. 23-2114 at 3-22.

[26] Pet. at 1.

[27] Mot. at 1.

[28] June 15, 2023 U.S. Vet. App. Order, No. 23-2114.

[29] Secretary's Resp. to June 15, 2023, U.S. Vet. App. Order, No. 23-2114, at 4.

[30] *Id.* at 8.

[31] Pet. at 4-5; Mot. at 20-29.

U.S. 4 (1942) as providing the Court authority to grant the stay.[32] Petitioner argues that it is entitled to a stay because (1) it is likely to succeed on the merits of the underlying appeal of the grant terminations; (2) it, its employees, and the veterans it serves will be "irreparably harmed" by the grant terminations; (3) an involuntary stay of the grant terminations will not harm VA; and (4) the grant terminations "will harm the public interest."[33]

The Secretary opposes petitioner's request. He contends that the AWA is the Court's sole source of authority to issue extraordinary relief, and that here, the relief petitioner seeks isn't appropriate under the AWA.[34] Specifically, the Secretary argues that a writ isn't necessary to protect the Court's prospective jurisdiction, and that exercising authority under the AWA here would be inconsistent with the statutory scheme Congress established for review of VA actions in this Court.[35] Alternatively, the Secretary contends that even if the Court is empowered to grant the type of relief petitioner seeks, petitioner has not demonstrated that it is entitled to a writ.[36]

## IV. JURISDICTION AND AUTHORITY TO IMPOSE A STAY/INJUNCTION

Our first task is to consider whether the Court has the authority to impose a stay of administrative action pending an appeal. If we don't, then we don't have the power to grant a stay of the termination of the SSVF grants at issue and our analysis ends there. So, we begin by addressing this purely legal issue.

Petitioner focuses its argument concerning the Court's authority question principally on Rule 8, 5 U.S.C. § 705, and *Scripps-Howard*. It spends less time discussing the AWA, the statute that provides the authority for the petition itself. As we will explain, we conclude that the Court has the authority to issue a stay of administrative action pending appeal under the AWA as informed by Rule 8 of this Court's Rules of Practice and Procedure. Given that, we need not decide whether section 705 or *Scripps-Howard* would provide the Court the authority to issue a stay of administrative action pending appeal.[37]

Before explaining why we have the authority to impose a stay of administrative action pending appeal as a generic matter, we pause to address an issue concerning the slightly different terminology the parties use to describe the relief sought in this case. Petitioner refers to the relief sought as a "stay,"[38] but the Secretary refers to it as a "preliminary injunction."[39] True, "[a] stay pending appeal certainly has some functional overlap with an injunction, particularly a preliminary

---

[32] Mot. at 23-29.

[33] *Id.* at 26-29.

[34] Secretary's Resp. at 5.

[35] *Id.*

[36] *Id.*

[37] As we explain below, we conclude that the standard we adopt for assessing whether a stay of administrative action pending appeal is not meaningfully different from the tests that would apply under section 705 or *Scripps-Howard*.

[38] *See generally* Pet.; Mot.

[39] *See generally* Secretary's Resp.

one."[40] But there are still subtle differences between the two. "[A] stay achieves [its] result by temporarily suspending the source of authority to act—the order or judgment in question . . . . A stay 'simply suspend[s] judicial alteration of the status quo.'"[41] Injunctive relief, on the other hand, directs a party's conduct.[42] Here, petitioner is not seeking an order directing VA to act or even prohibiting it from acting. Instead, petitioner is asking the Court to temporarily suspend the decision terminating its SSVF benefits, that is, suspending the source of the Agency's power to act. So, we conclude that petitioner's request is best seen as a stay. To the extent relevant legal principles differ for a stay as opposed to an injunction, we will employ those concerning stays.[43] Having completed our semantics detour, we turn now to the authority of the Court to impose a stay of administrative action pending appeal.

This Court is a statutory creation with 38 U.S.C. § 7252(a) providing the sole source of our jurisdiction.[44] Congress granted the Court "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals."[45] Here, petitioner is still waiting for a Board decision, so we have no basis to act on our statutory authority. But that does not mean we are necessarily without the power to act. When a claimant petitions the Court for extraordinary relief, it does so through the AWA. The AWA provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[46] "That includes the power of this Court to issue a writ of mandamus, . . . including in aid of our *prospective* jurisdiction, where 'an alleged refusal to act would forever frustrate the ability of [this Court] to exercise its appellate jurisdiction.'"[47] In other words, the Court "has the power to issue writs under the [AWA] in aid of its prospective appellate jurisdiction in the face of action . . . . that would frustrate such prospective appellate jurisdiction."[48] So, we reach the unremarkable abstract conclusion that if staying an administrative action serves the purpose of protecting the Court's prospective jurisdiction to consider an appeal of an action under section 7252, the AWA provides authority for the Court to act.

---

[40] *Nken v. Holder*, 556 U.S. 418, 428 (2009).

[41] *Id.* at 428-29 (alteration in original) (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986)).

[42] *Id.* at 428.

[43] This overlap, in addition to the purpose that each serve, includes the legal standards that courts follow to determine whether a stay or injunctive relief is warranted. *See id.* at 434 ("There is substantial overlap between [the stay factors] and the factors governing preliminary injunctions, . . . not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined.").

[44] *Love*, 35 Vet.App. at 341.

[45] 38 U.S.C. § 7252(a).

[46] 28 U.S.C. § 1651(a); *Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017) ("The [AWA] unquestionably applies in the Veterans Court."); *Love*, 35 Vet.App. at 342 (noting that under the AWA, the Court has the power to issue a writ of mandamus); *Gardner-Dickson v. Wilkie*, 33 Vet.App. 50, 54 (2020) (noting that the AWA gives this Court "the authority to hear petitions and issue writs in aid of our jurisdiction"), *aff'd sub nom. Gardner-Dickson v. McDonough*, No. 2021-1462, 2021 U.S. App. Vet. Claims LEXIS 33000 (Fed. Cir. Nov. 5, 2021) (per curiam judgment).

[47] *Love*, 35 Vet.App. at 342 (alteration in original) (quoting *Erspamer v. Derwinski*, 1 Vet.App. 3, 8 (1990)).

[48] *Margolis v. Banner*, 599 F.2d 435, 440-41 (C.C.P.A. 1979).

Turning to the facts before us, PBFF petitioned the Court for extraordinary relief in the form of a writ of mandamus.[49] As the party seeking a writ of mandamus, petitioner bears the burden of proving entitlement to a writ.[50] Therefore, as a threshold matter, petitioner must show that a writ is warranted under the AWA because it is in aid of the Court's prospective jurisdiction.[51] Ultimately, petitioner has shown that the issuance of a writ is in aid of our prospective jurisdiction because without it, there is a serious likelihood that PBFF would cease to exist in any meaningful sense. That in turn means there is a serious likelihood that the Court's prospective jurisdiction over an appeal of the administrative action at issue (the terminations) would be undermined.

Petitioner contends that if its SSVF grants are terminated, "it will end PBF[F]. It is, essentially, a death penalty."[52] Supported by sworn affidavits, petitioner asserts that the entire PBFF staff will lose their jobs if the grants are terminated, rendering its pending appeal at the Board effectively moot and thwarting the Court's potential jurisdiction.[53] The Secretary disagrees, contending that petitioner hasn't provided sufficient evidence to substantiate its assertion.[54] The Secretary maintains that even assuming petitioner's grants are terminated, PBFF will not cease to exist as a legal entity, and as long as it "maintains an interest in disputing the termination . . . this Court's jurisdiction would not be moot."[55]

We conclude that petitioner has sufficiently shown that the issuance of a writ staying the termination of its SSVF grants pending appeal is in aid of our prospective jurisdiction. This is an extraordinary circumstance; we agree that without the issuance of a writ, our potential jurisdiction is frustrated because PBFF has demonstrated a serious likelihood that it wouldn't exist as an entity meaningfully capable of appealing an adverse Board decision concerning the SSVF grant terminations.[56] The Secretary asserts that PBFF will remain a legal entity with the ability to appeal an adverse Board decision to this Court.[57] The Secretary is likely correct that, on paper at least, PBFF will continue to exist after the termination of its SSVF grants. But such corporate niceties fail to capture the practical reality of the situation: An organization's workforce—here, the paid employees tasked with fulfilling PBFF's mission—is what maintains an organization. Just as a law firm is useless without lawyers and professional staff, PBFF is useless without its employees. And petitioner offers evidence, in the form of sworn affidavits, attesting to this point. The Secretary hasn't pointed to any evidence that disputes them.

---

[49] Pet. at 1. Because this case comes in the form of a petition, the "record" before the Court consists of the facts presented in the petition itself and any documents submitted by petitioner that are "necessary to understand and support the petition." U.S. VET. APP. R. 21(a).

[50] *Gardner-Dickson*, 33 Vet.App. at 55.

[51] We discuss the other requirements for the issuance of a writ under AWA in the next section of this order.

[52] Pet. at 3.

[53] *See* Pet. at 3; Pet. Ex. at 41-71.

[54] Secretary's Resp. at 12.

[55] *Id.* at 13 (internal quotation marks omitted).

[56] *See Erspamer*, 1 Vet.App. at 8.

[57] Secretary's Resp. at 13.

We are also unpersuaded by the Secretary's assertion that the exercise of our authority to consider a stay of administrative action pending appeal under the AWA runs afoul of Congress's statutory scheme for judicial review of VA action.[58] We have long held that the AWA does not expand the Court's jurisdiction.[59] Therefore, a petitioner must show "that the action sought to be corrected by mandamus is within [the] court's statutorily defined subject matter jurisdiction."[60] Here, petitioner has done so: its appeal was filed at the Board and is awaiting a decision, placing the claim in our prospective jurisdiction.[61] Petitioner isn't asking the Court to conduct a substantive review of the appeal.[62] Instead, it's seeking a writ to prevent the "corporate death penalty," an outcome that would thwart the proper exercise of our jurisdiction because PBFF wouldn't exist in a meaningful way even assuming it would continue to have some sort of legal existence as a formal matter.[63]

Petitioner also contends that Rule 8 of this Court's Rules of Practice and Procedure grants the Court authority to impose a stay pending appeal.[64] Rule 8 is titled "Suspension of Secretarial Action or Suspension of Precedential Effect of Decision of this Court."[65] The rule provides, in relevant part: "After a[] . . . petition has been filed, a party seeking a Court order to suspend action by the Secretary or the Board . . . pending its appeal shall submit for filing with the Clerk a motion."[66] The motion must state the reason for relief and the facts relied on, and be supported by affidavits or other sworn statements.[67] The Court understands "Rule 8's introductory clause to mean 'filed [in this Court].'"[68]

Given our conclusion that the AWA provides authority to issue a stay of administrative action pending appeal in an appropriate case, we don't need to decide whether Rule 8 would independently support such an action. Nevertheless, we think that Rule 8 and the cases that have discussed the Rule provide helpful guidance about the standards governing whether a stay of administrative action pending appeal is warranted under the AWA. We turn to that question now.

---

[58] *Id.* at 14-17.

[59] *Love*, 35 Vet.App. at 346; *Gardner-Dickson*, 33 Vet.App. at 56.

[60] *Baker Perkins, Inc. v. Werner & Pfleiderer Corp.*, 710 F.2d 1561, 1565 (Fed. Cir. 1983).

[61] The March 2023 termination letter VA issued provided appellate rights to the Board. Pet. Ex. at 12-13. In addition, the Secretary conceded, for the purposes of this proceeding, that the Board has subject-matter jurisdiction over petitioner's SSVF grant terminations. Secretary's Resp. at 4 n.6. We see nothing to suggest that the Board lacks jurisdiction over this matter even though the assessment of grant terminations is not the bread and butter of Board action. *See* 38 C.F.R. § 20.104(b) (2023) (extending the Board's jurisdiction to "questions of eligibility for . . . other benefits administered by the Veterans Health Administration").

[62] *See generally* Pet.

[63] *See Monk*, 855 F.3d at 1318 (explaining that the AWA "permits federal courts to fill gaps in their judicial power where those gaps would thwart the otherwise proper exercise of their jurisdiction").

[64] Mot. at 23-29.

[65] U.S. VET. APP. R. 8.

[66] U.S. VET. APP. R. 8(a).

[67] U.S. VET. APP. R. 8(b)(1-2).

[68] *Wolfe v. McDonough*, 34 Vet.App. 187, 193 (2021).

## V. LEGAL STANDARD

Mandamus relief is appropriate when three conditions are met: (1) The petitioner shows a clear and indisputable right to the writ; (2) the petitioner shows the lack of adequate alternative means to obtain the desired relief; and (3) the Court is convinced, given the circumstances, that issuance of the writ is warranted.[69] In the closely analogous situation of suspending Secretarial action under Rule 8, the Court has adopted a four-part test to consider whether such an action is appropriate.[70] We think that the test under Rule 8 provides a useful rubric for assessing whether, under the strictures of the AWA, a stay of administrative action pending appeal is warranted. In other words, the Court's four-part Rule 8 test to suspend Secretarial action[71] provides a concrete means of establishing a clear and indisputable right to a writ and that a writ is warranted (two of the three AWA elements) in this circumstance. This leaves only the question of the adequacy of some alternative means to obtain the relief at issue. So, when we synthesize the standards, petitioner is entitled to a stay of administrative action pending appeal if the following 5 conditions are shown: (1) a lack of adequate alternative means to obtain the desired relief; (2) a likelihood of success on the merits of the applicant's appeal; (3) whether the applicant will suffer irreparable harm in the absence of such relief; (4) the effect on VA of granting the stay; and (5) the public interest.[72]

Before we apply the test we have articulated to the facts before us, we briefly address petitioner's argument that we should act under section 705 of the Administrative Procedure Act (APA) or the Supreme Court's decision in *Scripps-Howard*. Petitioner urges the Court to consider the merits of the petition under this authority because it asserts that both the APA and *Scripps-*

---

[69] *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004); *Gardner-Dickson*, 33 Vet.App. at 55.

[70] The test is the following:  (1) the likelihood of success on the merits of the moving party's appeal; (2) whether the moving party will suffer irreparable harm in the absence of such relief; (3) the effect on the nonmoving party of that stay; and (4) the public interest . *See Malik v. Peake*, 22 Vet.App. 183, 185 (2008); *Ribaudo v. Nicholson*, 20 Vet.App. 552, 560 (2007) (en banc), *abrogated on other grounds by Martin v. O'Rourke*, 891 F.3d 1338 (Fed. Cir. 2018). As we mentioned, there is overlap between the factors for a stay pending appeal and for a preliminary injunction. *See Nken*, 556 U.S. at 434 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Given this overlap, it's worth recognizing that after the Supreme Court's decision in *Winter*, the circuit courts have been split on whether the factors for injunctive relief employ a "sliding scale" balancing test. *See D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 328 (6th Cir. 2019) (Nalbandian, J., concurring) (recognizing that after *Winter*, "[s]ome circuits have continued to follow balancing or sliding-scale tests while others treat the factors as strict requirements"). Under this approach, a preliminary injunction may be warranted when a stronger showing of one factor offsets a weaker showing of another. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020). We need not weigh in on whether a sliding scale approach is applicable to the Court's Rule 8 analysis. As we explain below, petitioner has entirely failed to show a likelihood of success on the merits. So it doesn't matter whether there is some sliding scale under which a weak showing on one factor may be forgiven. As Justice Kennedy explained, "courts cannot dispense with the required showing of one [factor] simply because there is a strong likelihood of the other." *Nken*, 556 U.S. at 438 (Kennedy, J., concurring). In short, the Court cannot balance a factor that hasn't been shown at all, which is the case here.

[71] Though petitioner is seeking a "stay," there is no meaningful difference between that and a "suspension" of a judgment or secretarial action pending appeal. *Compare Stay*, BLACK'S LAW DICTIONARY 1709 (11th ed. 2019) ("2. An order to *suspend* all or part of a judicial proceeding or a judgment resulting from that proceeding." (emphasis added)), *with Suspension*, BLACK'S LAW DICTIONARY 1748 (11th ed. 2019) ("1. The act of temporarily delaying, interrupting, or terminating something.").

[72] *See Nken*, 556 U.S. at 434; *Cheney*, 542 U.S. at 380-81.

*Howard* only require a showing of irreparable harm to warrant granting a stay pending appeal.[73] In other words, petitioner maintains that the four-part injunctive relief standard is not applicable in the context of assessing whether to stay administrative action pending appeal. But petitioner misunderstands the requirements of section 705 and the holding in *Scripps-Howard*.

Section 705 provides in relevant part: "On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court[] . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."[74] Petitioner contends that a plain reading of section 705 only requires irreparable harm for a reviewing court to issue a stay pending appeal.[75] We disagree. A section 705 stay is warranted only if the traditional four-part standard for a preliminary injunction is satisfied.[76] So petitioner is simply wrong that the APA "substantially simplifies the four-part test" utilized to consider a stay pending review.[77]

Next, petitioner argues that *Scripps-Howard* provides the Court independent authority to maintain the status quo by staying the termination of the SSVF grants *pendente lite* by only finding a likelihood of irreparable injury in the absence of a stay.[78] In *Scripps-Howard*, the Supreme Court discussed the inherent authority Federal courts have to "stay the enforcement of a judgment pending the outcome of an appeal."[79] As the Court held:

> No court can make time stand still. The circumstances surrounding a controversy may change irrevocably during the pendency of an appeal, despite anything a court can do. But within these limits it is reasonable that an appellate court should be able to prevent irreparable injury to the parties or to the public resulting from the premature enforcement of a determination which may later be found to have been wrong. It has always been held, therefore, that, as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.[80]

There is no question that *Scripps-Howard* "highlighted the historic pedigree and importance" of the inherent power that courts of appeals have to issue stays without express delegation from Congress.[81] But petitioner grossly misreads *Scripps-Howard* as only requiring a

---

[73] OA at 7:00-:15.

[74] 5 U.S.C. § 705. We assume, without deciding, that this Court is a "reviewing court" within the meaning of section 705 or that section 705 applies to our Court at all.

[75] Mot. at 20-21.

[76] *See Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1135-36 (5th Cir. 2021).

[77] Mot. at 20.

[78] Mot. at 23 n.20. We also only assume that the principle *Scripps-Howard* embodies applies to this Court.

[79] *Scripps-Howard Radio, Inc.*, 316 U.S. at 10.

[80] *Id.* at 9-10 (footnote omitted).

[81] *Nken*, 556 U.S. at 426.

showing of irreparable injury, and nothing else, for a court to impose a stay pending appeal.[82] The Supreme Court expressly made clear that its decision in *Scripps-Howard* only "recognize[d] the existence of the power to grant a stay."[83] The Court was "not concerned . . . with the criteria which should govern [a] [c]ourt in exercising that power."[84] So we disagree that *Scripps-Howard* calls for only a showing of irreparable injury.

The bottom line is that neither section 705 nor *Scripps-Howard* provides a meaningfully different standard to assess whether a stay of administrative action pending appeal is appropriate than the standard we have adopted under the AWA as informed by Rule 8. And because that is the case, we want to make clear that nothing in this order should be read as holding that either section 705 or *Scripps-Howard* applies in this Court. We leave those questions for another day. Now, we are ready to turn to the merits.

## VI. STAY OF GRANT TERMINATION NOT WARRANTED

To repeat, the five conditions that petitioner must show to be entitled to a stay of administrative action pending appeal are (1) a lack of adequate alternative means to obtain the desired relief; (2) a likelihood of success on the merits of the applicant's appeal; (3) whether the applicant will suffer irreparable harm in the absence of such relief; (4) the effect on VA of granting the stay; and (5) that granting the relief is in the public interest.[85] We will discuss each factor; but we will address petitioner's likelihood of success on the merits and whether it will suffer irreparable harm last because these two considerations are the paramount factors.[86] Ultimately, we conclude that petitioner is not entitled to a stay pending appeal because petitioner has failed to produce any evidence showing a likelihood of success on the merits of its administrative appeal before the Board.

### A. Petitioner Lacks Alternative Means to Obtain Relief

Petitioner has shown that it lacks alternative means to obtain a stay of the grant terminations pending appeal before the Board. When petitioner sought relief before the Court, it also requested a stay of the grant terminations before the Board.[87] Petitioner confirmed this fact during oral argument, but both parties were unsure how the Board would handle the request, including whether the Board would hold that it had the authority to grant a stay.[88] Given this uncertainty and the importance of determining whether there was an alternative administrative means for petitioner to obtain a stay, the Court ordered the Secretary to obtain a declaration from an appropriate Board

---

[82] *See* OA at 7:00-:13.

[83] *Scripps-Howard Radio*, *Inc.*, 316 U.S. at 17.

[84] *Id.*; *see Nken*, 556 U.S. at 426-27.

[85] *See Nken*, 556 U.S. at 434; *Cheney*, 542 U.S. at 380-81.

[86] *Nken*, 556 U.S. at 434 (describing the likelihood of success on the merits and irreparable injury factors as the "most critical").

[87] Pet. at 4.

[88] OA at 5:10-:21, 30:38-32:20.

official informing the Court, among other things, whether the Board had authority to consider the merits of petitioner's request for a stay.[89]

As we described above, on June 29, 2023, the Secretary filed a declaration from the Board's chief counsel, Anthony C. Scire, Jr. In the declaration, Mr. Scire informed the Court that on June 28, 2023, the Board sent a letter to petitioner stating that the Board "cannot consider the motion for stay on the merits because [the Board] does not have the authority to grant the relief sought."[90] Therefore, the Board informed petitioner that it would "not address the merits of the request to involuntarily stay the termination of SSVF grants awarded to PBFF while its appeal of VA's decision to terminate those grants is pending."[91] Accordingly, petitioner has shown that it lacks adequate alternative means to obtain the desired relief.

## B. The Effect on VA of Granting the Stay

The impact on VA of granting the stay is limited at best; therefore, this factor favors a stay.[92] VA has a significant interest in the SSVF program and its operation, and we don't discount that interest.[93] But the harm to VA if we grant the stay is minimal when balanced against the harm to petitioner if the stay is denied. For example, granting the stay will temporarily bar VA from enforcing the termination of petitioner's SSVF grants.[94] However, if the Court denies the stay, there is a serious likelihood that petitioner will permanently close.[95] The effect of temporarily suspending VA from enforcing its administrative action is light compared to the permanent harm inflicted on petitioner. Therefore, this factor favors granting a stay.

## C. The Public's Interest

The public-interest factor is mostly neutral, but ultimately tips in favor of granting a stay. That is, we aren't persuaded by either party that granting or denying the stay is firmly in the public interest. The Secretary has a responsibility to protect the public fisc.[96] Again, we don't discount this important role. Indeed, Judge Holdaway aptly described its importance:

---

[89] June 15, 2023 U.S. Vet. App. Order, No. 23-2114.

[90] Secretary's Resp. to June 15, 2023, U.S. Vet. App. Order, No. 23-2114, at 4.

[91] *Id.* at 8.

[92] Though this factor expressly calls the Court to look at the effect of the nonmoving party (here VA), the factor implicitly requires the Court to balance the harm to VA against the harm to petitioner. *See Rudisill v. McDonough*, 34 Vet.App 176, 186 (2021); *see also Wages & White Lion Invs.*, 16 F.4th at 1143 (analyzing the third factor as a balancing of harms). Courts cannot measure the impact of a stay in a vacuum. Rather, courts must balance the effects of the stay. *See id.* Therefore, the third factor requires the Court to balance the effect that granting a stay has on VA against the effect that denying the stay has on petitioner. *See id.*

[93] *See generally Stegall v. West*, 11 Vet.App. 268, 271 (1998) ("It is the Secretary who is responsible for the 'proper execution and administration of all laws administered by the Department and for the control, direction, and management of the Department.'" (quoting 38 U.S.C. § 303)).

[94] As we noted earlier, petitioner's SSVF grants are in the second year of a 3-year contract. OA at 56:25-:48.

[95] Pet. at 3.

[96] *See Brock v. Pierce Cnty.*, 476 U.S. 253, 259-60 (1986) (generally acknowledging that public agencies have a duty to protect both the public fisc and the integrity of the government programs they represent); *Ribaudo v. Nicholson*, 21

[I]t must be remembered that the Secretary is not merely representing the departmental interests, he is, in a larger sense, representing the taxpayers of this country and defending the public fisc from the payment of unjustified claims. . . . There is a duty to ensure that, insofar as possible, only claims established within the law are paid. The public fisc and the taxpayer must be protected from unjustified claims.[97]

Here, the importance of protecting the public fisc from temporarily having to continue petitioner's SSVF grants is overtaken by the permanent harm that is seriously likely to be inflicted on PBFF's employees. Again, this is a temporary suspension. Granting a stay requires VA to temporarily fund petitioner's grants until litigation resolves.[98] But on the other side of the scale, petitioner asserts that all 50 of its employees will permanently lose their jobs if the stay is denied because PBFF will be forced to close. The protection of 50 individuals' livelihoods is a significant public interest. Therefore, we find that the public interest tips in favor of granting the stay.

Both parties also address the potential impact that the stay will have on the veterans community PBFF serves. Petitioner asserts that without a stay, veterans will be harmed because "there is no practical means to provide PBF[F]'s veterans with equivalent alternate support."[99] The Secretary disagrees and points to the March 2023 termination letter, which indicates that the veterans participating in PBFF's SSVF program would be transferred to two local programs.[100] The Court was concerned by the potential impact this order may have on veterans, so we ordered the Secretary to file a declaration from an appropriate official confirming (1) the two organizations that will accept PBFF's veterans in the event that the SSVF grants are terminated, and (2) the organizations are capable of handling the transferred caseload.[101] The Secretary filed a declaration from Nikki L. Barfield, acting SSVF director, confirming that as of July 17, 2023, "the United Way of Broward County and Advocate Program, of Miami, FL, are the organizations to which [p]etitioner would transfer its caseload . . . if its SSVF grants are terminated."[102] Ms. Barfield also declared that both organizations are willing and able to absorb PBFF's caseload, and that the organizations "have confirmed that they have adequate staff and funding" to do so.[103]

The parties have starkly different opinions concerning the impact that the stay will have on PBFF's veteran community. But the sworn declarations from the acting director of SSVF offset

Vet.App. 137, 152 (2007) (en banc) (Schoelen, J., concurring in part and dissenting in part) (noting that the "Secretary plays the role of the guardian of the public fisc").

[97] *Rhodan v. West*, 12 Vet.App. 55, 58 (1998) (Holdaway, J., concurring), *vacated sub nom. Haywood v. West*, 251 F.3d 166 (Fed. Cir. 1999).

[98] We reiterate that petitioner's SSVF grants are in the second year of a 3-year contract. OA at 56:25-:48.

[99] Mot. at 13 n.11; *see* Mot. at 2, 4, 7-8, 26-28.

[100] Secretary's Resp. at 23.

[101] July 17, 2023, U.S. Vet. App. Order, No. 23-2114.

[102] Secretary's Resp. to July 17, 2023, U.S. Vet. App. Order, No. 23-2114, at 3.

[103] *Id.* Ms. Barfield also explained that all SSVF grantees are required to establish an appropriate transition plan, and that "SSVF provides support and assistance as needed." *Id.* at 4.

petitioner's concerns, balancing the public interest as it relates to veterans. Nonetheless, when we look at VA's interest in protecting the public fisc and the permanent harm that may occur on petitioner's employees, the public interest tips in favor of granting a stay, even if only slightly.

### D. Irreparable Harm

Petitioner has shown that it will face irreparable harm in the absence of a stay pending appeal. Though we have previously touched on this point in the context of discussing why a stay could be appropriate as a means of protecting our prospective jurisdiction, it is worth reiterating our conclusion in greater detail. Petitioner asserts that "if termination is not restrained, it will end PBF[F]. It is, essentially, a death penalty."[104] Seven signed affidavits attest that it is likely that all of PBFF's staff will lose their jobs if the SSVF grants are terminated.[105] Additionally, counsel for petitioner made representations during argument attesting that the SSVF grants fully fund the salaries of petitioner's employees.[106]

Here, the evidence establishes a likelihood that petitioner will suffer irreparable harm absent a stay pending appeal. The Secretary contends that the proffered harm is merely economic loss, which "alone is insufficient to constitute irreparable harm."[107] The Secretary relies on *Wisconsin Gas v. F.E.R.C.*, in which the D.C. Circuit noted that it was "well settled that economic loss does not, in and of itself, constitute irreparable harm."[108] But the Secretary ignores the portion of *Wisconsin Gas* in which the court stated that "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business."[109] And that is exactly the situation here: petitioner's existence is threatened by the termination of its SSVF grants. Corrective or compensatory relief—even assuming the Board could award such relief—won't be meaningful relief in the future because VA would have already sentenced petitioner to the corporate death penalty.

We also aren't persuaded by the Secretary's assumption that "employee layoffs would presumably offset some of the financial impact of the grant termination on [p]etitioner as [p]etitioner would no longer have to pay those employees."[110] True, if petitioner has to lay off all its employees it wouldn't have to pay them. But petitioner also wouldn't have any employees to operate the nonprofit organization—effectively killing it.[111] And petitioner attests that this will happen even though only 10% of the SSVF grants can be used for administrative costs.[112] In sum,

---

[104] Pet. at 3.

[105] *See, e.g.*, Pet. Ex. at 41, 44, 46, 48.

[106] OA at 24:20-25:30.

[107] Secretary's Resp. at 21 (citing *Wisc. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

[108] *Wis. Gas Co.*, 758 F.2d at 674.

[109] *Id.*

[110] Secretary's Resp. at 22.

[111] *See* Pet. Ex. at 41-71.

[112] OA at 24:20-25:30; *see* 38 C.F.R. §§ 62.10(b), 62.70(e).

we find that petitioner has shown, through evidence, that it will be likely face irreparable harm absent a stay pending appeal.

*E. Likelihood of Success on the Merits*

This brings us to the final factor: the likelihood of success on the merits. In stark contrast to the evidence petitioner has provided showing a likelihood of irreparable harm, petitioner has utterly failed to show that there is a likelihood it will prevail in its administrative appeal contesting the SSVF grant terminations.

"The likelihood of success on the merits of the moving party's appeal is not a rigid concept."[113] We have made it clear that showing a likelihood of success on the merits does not mean showing a mathematical probability of success.[114] Rather, "[t]o satisfy this requirement, the party seeking to maintain the status quo through a stay need only raise questions on the merits that are 'so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.'"[115]

Petitioner challenges the merits of VA's termination of SSVF grants on multiple fronts, including that the termination violated VA's regulations governing SSVF grants, regulations generally regulating Federal grants, and VA's financial policy. The Secretary disagrees, contending that petitioner has not met its burden of showing a likelihood of success on the merits. After considerable consideration, the Court concludes that petitioner has not met even the low threshold necessary to show a likelihood of success on the merits. We address petitioner's various arguments in turn in the following three subsections.

1. The Termination

First, petitioner maintains that John Kuhn, the director of the SSVF Program Office at the time petitioner's grants were terminated,[116] did not have authority to terminate the SSVF grants.[117] Specifically, petitioner contends that "[t]he person who signed [the] termination letter to PBF[F], John Kuhn, is not the VA official who issued the grants to PBF[F], nor is he the official who administered the grants."[118] According to petitioner, "[t]he law requires that termination of federal contracts and grants be executed by a single individual who has the legal authority to do so," but that didn't happen when its SSVF grants were terminated.[119] The problem is that petitioner doesn't

---

[113] *Ribaudo*, 21 Vet.App. at 141.

[114] *Id.* ("The determination of success does not depend on a showing of a mathematical probability of success, but rather on whether there is 'substantial equity, and [a] need for judicial protection,' such that 'an order maintaining the status quo is appropriate.'" (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir.1977))).

[115] *Id.* (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir.1953)).

[116] *See* Pet. Ex. at 13.

[117] Mot. at 10-11.

[118] *Id.* at 11.

[119] *Id.* at 10; *see id.* at 12.

provide any authority for this contention.[120] When the Court expressed its concern about the lack of authority during oral argument, petitioner again did not provide authority for its contention. Instead, petitioner merely doubled down on its bare conclusion by saying that John Kuhn lacked actual or apparent authority to terminate the grants, and that he wasn't a grants officer.[121] Petitioner hasn't provided the Court with a single legal citation to support its argument about a lack of authority to terminate. So, it hasn't shown that it has a likelihood of success on the merits of this argument either on the law or the facts.[122]

Next, petitioner contends that VA approved all its expenses in advance, and, therefore, VA inappropriately questioned 85% of petitioner's costs.[123] Petitioner fails to offer any evidence showing a likelihood of success on this point. In its motion, petitioner baldly states that VA pre-approved its costs, but it offers no evidence supporting this point.[124] During oral argument, petitioner pointed to the nine affidavits in the record as evidence of VA pre-approving expenses.[125] But none of the affidavits speak to pre-approval or even attempt to explain what expenses were pre-approved.[126] The president/CEO of PBFF, Seth Eisenberg, offers the only affidavit that mentions approved costs, but in a different context:

> The [itemized list of questioned costs] contains numerous expenses that have been consistently approved and paid throughout previous audits, and that could have been quickly approved and paid again if the typical back-and-forth discussions that have taken place in prior audits had occurred here. I am concerned that VA's decision to withhold this list from PBF[F] for months after completion of the audit was a deliberate attempt to deny PBF[F] the opportunity to answer and resolve identified audit issues prior to the deadline for renewing our program's annual grant funding, without due process or recourse.[127]

Mr. Eisenberg's affidavit does not support the notion that VA pre-approved PBFF's expenses for the time period covered by the audit. Rather, it's clear that Mr. Eisenberg's statement concerns the allegation that VA failed to provide petitioner with an opportunity to explain and

---

[120] *See* Mot. at 10-11; OA at 8:30-10:10.

[121] OA at 9:26-10:10.

[122] Perhaps recognizing the difficulty of asserting a legal position with no authority, petitioner's counsel qualified its position at oral argument by saying that the lack of authority point is "5% of [petitioner's] argument . . . maybe less." OA at 9:26-:35.

[123] Mot. at 6, 9 n.5; OA at 10:40-:47, 11:33-16:50; *see* Pet. Ex. at 2.

[124] Mot. at 6, 9 n.5.

[125] OA at 12:00-:15. During oral argument, petitioner also pointed to "dozens of submissions both in the District Court and in the Court of Appeals" as evidence of VA pre-approving petitioner's costs. *Id.* at 12:10-:14. However, those weren't filed with this Court. Our review is limited to petitioner's filings, which should "state the facts necessary to understand the issues" and be filed with "any other documents necessary to understand and support the petition." U.S. VET. APP. R. 21(a)(2), (4). But even if we put that point aside, our job is not to root around in the ground hoping we find the truffle that proves petitioner's case. Petitioner must present evidence to the Court and it hasn't done so.

[126] *See* Pet. Ex. at 41-71.

[127] *Id.* at 60.

resolve the questioned costs "prior to the deadline for renewing . . . [PBFF's] annual grant funding."[128] Additionally, it's difficult to conclude that VA pre-approved petitioner's expenses given that petitioner conceded that some expenses were unallowable.[129] Logically, expenses couldn't be unallowable if they had previously been approved. The fact is that petitioner only offers bare conclusions, unsupported with evidence or analysis, about its pre-approval argument. Therefore, it fails to show a likelihood of success on the merits with respect to this point.

This brings us to petitioner's contention that VA (through the SSVF Program Office) "rubber-stamped" the OBO audit's questioned costs by failing to address petitioner's "voluminous refutation" of that audit.[130] To begin with, petitioner provides no evidence that the SSVF Program Office acted inappropriately in accepting the OBO audit. Petitioner only offers the Court a single example of supposedly inappropriate "rubber-stamping," asserting that PBFF's treasurer submitted a sworn declaration to VA explaining that a questioned cost was a clerical error.[131] But petitioner doesn't explain why discounting that declaration (if that is what happened) amounts to "rubber-stamping," and we can't see how it would. Nor do we even have that declaration to allow us to make an independent judgment on the matter.[132] In any event, VA acknowledged that petitioner provided responses to the audit, but that the responses do "not determine or limit the options available to the SSVF Program Office when making a management decision."[133] And one final point on this argument. Petitioner relies heavily on its purportedly "voluminous response" to the audit.[134] Stunningly, however, petitioner did not provide this document to the Court, underscoring the utter failure to show a likelihood of success on the merits through the submission of evidence.

## 2. Regulatory and Policy Challenges

Petitioner presents various arguments contending that the terminations violate certain Federal regulations and VA policy.[135] To begin with, petitioner contends that VA violated 2 C.F.R. § 200.339 (2023) when it terminated the SSVF grants before imposing remedial conditions.[136] For background, 2 C.F.R. Part 200 governs the uniform administrative and audit requirements for all Federal awards.[137] Therefore, VA must follow the general requirements of 2 C.F.R. Part 200 in addition to the SSVF specific regulatory requirements in 38 C.F.R. Part 62. Section 200.339 explains the "[r]emedies for noncompliance" and provides, in relevant part:

---

[128] *Id.*

[129] Pet. Ex. at 19.

[130] Mot. at 10, 11.

[131] Mot. at 14.

[132] *See generally* Pet. Ex.

[133] Pet. Ex. at 4.

[134] *See generally* Mot.; Pet.; Pet. Ex.; OA.

[135] *See* Mot. at 12-19.

[136] *Id.* at 12.

[137] 2 C.F.R. § 200.100 (2023) ("This part establishes uniform administrative requirements, cost principles, and audit requirements for Federal awards to non-Federal entities.").

If a non-Federal entity fails to comply with the U.S. Constitution, Federal statutes, regulations or the terms and conditions of a Federal award, the Federal awarding agency or pass-through entity may impose additional conditions, as described in § 200.208. If the Federal awarding agency or pass-through entity determines that noncompliance cannot be remedied by imposing additional conditions, the Federal awarding agency or pass-through entity may take one or more of the following actions, as appropriate in the circumstances:

* * *

**(c)** Wholly or partly suspend or terminate the Federal award.[138]

The additional conditions that an awarding agency may impose under 2 C.F.R. § 200.208 include, among other things, requiring "payments as reimbursements rather than advanced payments,"[139] "additional, more detailed financial reports," [140] "additional project monitoring," [141] or the establishment of "additional prior approvals."[142]

Petitioner contends that under § 200.339, VA "is supposed to" impose additional grant conditions listed under § 200.208(c) before terminating a Federal award, and that termination is only an appropriate remedy once "such conditions have been instituted and prove to be futile."[143] Petitioner is just plain wrong.

Section 200.339 does not require VA to impose additional conditions on a noncompliant grantee. The regulation provides that an awarding agency *may* impose additional conditions described in § 200.208 if a grantee is noncompliant.[144] But, if the awarding agency determines that "noncompliance cannot be remedied by imposing additional conditions," the agency may "[w]holly or partly suspend *or terminate* the Federal award." [145] Thus, termination can be immediately considered if the awarding agency determines that noncompliance cannot be remedied by any additional conditions found in § 200.208, which is contrary to petitioner's assertion. In other words, the regulation is one that *empowers* an agency by providing broad discretion in terms of remedial actions. It does not constrain the agency as petitioner suggests.

Here, VA clearly complied with § 200.339 and properly determined that imposing any of the additional requirements listed under § 200.209 cannot remedy petitioner's noncompliance. In the March 2023 termination letter, VA explained that each audit finding could not be remedied by

---

[138] 2 C.F.R. § 200.339(c).

[139] 2 C.F.R. § 200.208(c)(1) (2023).

[140] 2 C.F.R. § 200.208(c)(3).

[141] 2 C.F.R. § 200.208(c)(4).

[142] 2 C.F.R. § 200.208(c)(6).

[143] Mot. at 12-13, 13 n.10.

[144] 2 C.F.R. § 200.339.

[145] 2 C.F.R. § 200.339(c).

imposing additional requirements.[146] VA then explained why all six additional conditions listed under § 200.208(c)(1)-(6) should not be imposed on petitioner.[147] The plain language of § 200.339 is clear: termination of a Federal award may be imposed on a grantee when the awarding agency determines that additional conditions cannot remedy noncompliance. VA did that here, and petitioner's argument is contrary to the plain language of the regulation.[148] Therefore, petitioner has not shown a likelihood of success on this point.

Next, petitioner contends that VA violated 38 C.F.R. § 62.80(b) for, essentially, the same reasons we have just rejected. Section 62.80 is titled "Withholding, suspension, deobligation, termination, and recovery of funds by VA." When a grantee fails to comply with the terms or conditions of an SSVF grant, § 62.80(b) provides the actions VA may take:

> When a grantee fails to comply with the terms, conditions, or standards of the supportive services grant, VA may, on 7-days notice to the grantee, withhold further payment, suspend the supportive services grant, or prohibit the grantee from incurring additional obligations of supportive services grant funds, pending corrective action by the grantee or a decision to terminate in accordance with paragraph (c) of this section.[149]

Section 62.80(c)(1) allows VA to terminate an SSVF grant in whole or in part "if a grantee materially fails to comply with the terms and conditions of a supportive services grant award and this part."[150]

Petitioner contends that "it is arbitrary and capricious to base a termination on 'questioned costs' whose validity has never been determined by a neutral tribunal, especially when the quality of service provided has been exceptional."[151] This contention is merely a disagreement with the substance of the regulation, not an argument about why petitioner is likely to prevail on its challenge to the terminations at issue. Section 62.80(c) permits VA to terminate an SSVF grant award when it determines that a grantee fails to materially comply with the terms and conditions of an SSVF award. Here, VA determined that petitioner "materially failed to comply with numerous terms and conditions of their grant agreement," and that termination is warranted.[152] Nowhere in the regulation, or authorizing statute, is a neutral tribunal required to determine the validity of "questioned costs" before termination.[153]

---

[146] Pet. Ex. at 4, 5, 6, 7.

[147] *Id.* at 10-12 ("The following six items are examples of conditions allowed by 2 C.F.R. § 200.208[(c)] with explanations for why they have been exhausted or cannot remedy the situation.").

[148] To the extent petitioner argues that § 200.339 requires a showing that instituted additional conditions are futile, this is again blatantly contrary to the plain language of the regulation. *See* 2 C.F.R. § 200.339(c).

[149] 38 C.F.R. § 62.80(b).

[150] 38 C.F.R. § 62.80(c).

[151] Mot. at 15.

[152] Pet. Ex. at 7.

[153] *See* 38 U.S.C. § 2044; 38 C.F.R § 62.80.

19

Next, petitioner contends that VA violated 38 C.F.R. § 62.80 by failing to consider "'additional conditions in lieu of termination.'"[154] But nowhere in § 62.80 is VA required to impose additional conditions before terminating an SSVF grant.[155] Petitioner also argues that VA failed to provide an opportunity for "corrective action by the grantee" in lieu of termination.[156] Again, the plain language of § 62.80(b) doesn't require corrective action before termination. The regulation permits VA to "withhold further payment[] . . . pending corrective action by the grantee *or a decision to terminate*."[157] Petitioner entirely ignores § 62.80(b)'s use of "or," which signals that VA can implement corrective action *or* termination.[158] And because petitioner hasn't argued that § 62.80 is ambiguous, the "regulation . . . just means what it means—and the court must give it effect." [159] Petitioner hasn't offered any evidence, analysis, or explanation demonstrating a likelihood of success in arguing that VA violated § 62.80(b), (c).

Last, petitioner contends that VA violated its own financial policy regarding grant management.[160] For context, the Office of Financial Policy (OFP) provides financial policy and guidance to the Department's Administrations and Staff Offices, which covers a variety of topics, including grants.[161] The problem with petitioner's argument is that it—in a continuation of a disturbing pattern—doesn't connect the dots necessary to show a likelihood that it will prevail on this contention. Indeed, petitioner doesn't explain how VA supposedly violated the policy let alone cite any authority indicating that the policy is binding on VA.[162] Petitioner merely quotes five paragraphs from the policy, apparently believing it is the Court's responsibility to fill in the blanks.[163] In any event, the policy itself only cautions that "termination may not be the appropriate remedy, and may have significant adverse impacts on the grants program office, the grantee, or Veteran the grant serves."[164] In no way does the policy bar VA from terminating the grants that it administers. The policy recognizes that "there may be instances in which termination is the most appropriate *first course of action* and is necessary to protect the interests of the Government and

---

[154] Mot. at 15.

[155] *See* 38 C.F.R. § 62.80.

[156] Mot. at 15; *accord* 38 C.F.R. § 62.80(b).

[157] 38 C.F.R. § 62.80(b).

[158] *See* Mot. at 15, 17; *see also Loughrin v. United States*, 573 U.S. 351, 357 (2014) (recognizing that "or" is "'almost always'" disjunctive (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013))); *Huerta v. McDonough*, 34 Vet.App. 76, 81 (2021) (explaining that the use of the disjunctive "or" intends the words it connects to be viewed separately).

[159] *Kisor v. Wilkie*, __ U.S. __, __, 139 S. Ct. 2400, 2415, 204 L. Ed. 2d 841 (2019).

[160] Mot. at 16-17.

[161] Dep't of Veterans Affairs, FINANCIAL POLICY, vol. X (Grants Management), ch. 5 (Grant Post Award) (Jan. 2017), https://department.va.gov/financial-document/chapter-05-grants-post-award/ (last visited Aug. 25, 2023).

[162] *See* Mot. at 16-17. Petitioner quotes five paragraphs in its motion, but we won't reiterate the portions here, because it would serve no beneficial purpose given that petitioner doesn't explain their significance, if any. *See id.*

[163] Mot. at 16-17. Petitioner's "reasons" for how VA violated the policy only include quote alterations that are abruptly inserted into the quoted paragraphs indicating that the subject of the quoted paragraph didn't "happen here." *Id.*

[164] Dep't of Veterans Affairs, FINANCIAL POLICY, vol. X (Grants Management), ch. 5 (Grant Post Award) (Jan. 2017), https://department.va.gov/financial-document/chapter-05-grants-post-award/ (last visited Aug. 25, 2023).

the public."[165] It's only after this acknowledgment that the policy advises VA enforcement actions to escalate in severity, based on an unwillingness or inability to take corrective action.[166] And here, VA considered and ultimately determined that corrective actions could not remedy noncompliance.[167] Therefore, the Court can confidently hold that petitioner has not shown a likelihood to succeed on this point.

### 3. Subsidiary Arguments

Next, petitioner briefly mentions various other arguments throughout its motion that are largely underdeveloped.[168] Nevertheless, we will address each of them to ensure a thorough analysis. Petitioner argues that VA never issued a "notice of default, or a cure notice with an opportunity to cure, before termination—even after the audit concluded."[169] We don't see how this argument shows a likelihood of prevailing in an appeal to the Board. After all, petitioner was given an opportunity to respond to the audit, which it did.[170] Regarding the "opportunity to cure," petitioner doesn't cite any authority that requires VA to provide grantees with an opportunity to cure noncompliance before termination and we are aware of none.[171] As we explained, regulations allow VA to terminate grants without implementing additional conditions or corrective actions.[172]

Petitioner also takes issue with the analysis set forth in the March 2023 termination letter.[173] Petitioner contends that there isn't a "'searching and meaningful evaluation of all relevant evidence,' . . . that is required of any agency action."[174] Petitioner relies on *Johnson v. Governor of State of Florida*, but that reliance is misplaced; the Eleventh Circuit vacated that panel opinion when it granted rehearing en banc.[175] But putting that aside, the portion of *Johnson* on which petitioner relies concerns a challenge to a Florida law as a violation of section 2 of the Voting

---

[165] *Id.* (emphasis added).

[166] *Id.* The same is true for petitioner's brief assertion that VA failed to use alternative dispute resolution (ADR) to avoid the enforcement action. *See* Mot. at 18. The financial policy only encourages the use of ADR "where possible to avoid the need for an enforcement action." FINANCIAL POLICY Vol. X, ch. 5, https://department.va.gov/financial-document/chapter-05-grants-post-award/.

[167] Pet. Ex. at 7.

[168] *See Locklear v. Nicholson*, 20 Vet.App. 410, 416-17 (2006) (stating that the Court will not entertain underdeveloped arguments).

[169] Mot. at 13; *see id.* at 17.

[170] Pet. Ex. at 2 ("SSVF provided PBFF with 30 days . . . to submit a written response to the OBO audit findings, along with all documentation and information that PBFF contended would validate the 'Questioned Costs,' refute the findings of the OBO audit, or otherwise show that PBFF was not materially failing to comply with the terms and conditions of the SSVF grant agreements and 38 C.F.R. part 62.").

[171] *See* Mot. at 13.

[172] *See* 2 C.F.R. § 200.339; 38 C.F.R. § 62.80(b), (c).

[173] Mot. at 13, 17-19.

[174] Mot. at 13 (quoting *Johnson v. Governor of Fla.*, 353 F.3d 1287, 1304 (11th Cir. 2003), *vacated* 405 F.3d 1214, 1217 (11th Cir. 2005)).

[175] *Johnson*, 405 F.3d at 1217.

Rights Act.[176] *Johnson* cannot be read to dictate Federal agency conduct because it has nothing to do with a Federal agency. Additionally, petitioner's argument is really a conclusion without any analysis. The March 2023 termination letter thoroughly explains the results of the audit and why petitioner's SSVF grants are being terminated. Petitioner has again failed to show that this argument is likely to allow it to succeed in its challenge to the SSVF grant terminations.

Finally, petitioner contends that VA could not terminate its SSVF grants based on a finding of "questioned costs."[177] Recognizing that we likely sound like a broken record by now, petitioner doesn't offer an explanation or any analysis about this argument.[178] The March 2023 termination explains that OBO's initial audit identified $955,710.40 in questioned costs.[179] After petitioner's response to the audit, OBO cleared $80,348.48 in questioned costs.[180] But "245 exceptions remained with unallowable costs totaling $875,361.92."[181] Petitioner doesn't explain why VA couldn't terminate its SSVF grants after this finding. True, § 200.1 explains that a questioned cost is "not an improper payment until reviewed and confirmed to be improper as defined in OMB Circular A–123 appendix C."[182] But petitioner doesn't offer *any* analysis about why the March 2023 termination letter violated this principle.[183] Indeed, the termination letter clearly states that it determined $875,361.92 in costs were unallowed. Again, petitioner hasn't shown that it is likely to succeed on the merits with respect to this underdeveloped argument.

In sum, petitioner has entirely failed to show that it is likely to succeed on the merits of its Board appeal contesting the terminations. To be clear, we have not considered the merits of this case as we would a normal case on appeal. We understand that showing a likelihood of success is a low threshold, but it is a threshold nonetheless.[184] Here, all of petitioner's arguments are simply bare conclusions or assertions that are directly contrary to the plain language of Federal regulations and policy and are unsupported by evidence. To leave no doubt, we will deny PBFF's petition for extraordinary relief based on a lack of evidence and developed argument.

---

[176] *See* Pet. at 13-14 (citing *Johnson*, 353 F.3d at 1304).

[177] *See* Mot. at 6, 16-17; *see* 2 C.F.R. § 200.1 (defining "questioned cost"). Additionally, petitioner cites 2 C.F.R. § 200.84—however, that regulation was removed on February 22, 2021. 86 Fed. Reg. 10,439 (Feb. 22, 2021).

[178] *See* Mot. at 6, 16-17.

[179] Pet. Ex. at 2.

[180] *Id.*

[181] *Id.*

[182] 2 C.F.R. § 200.1.

[183] *See* Mot. at 6, 16-17.

[184] *See Nken*, 556 U.S. at 438 (Kennedy, J., concurring) ("Under the Court's four-part standard, the [applicant] must show both irreparable injury and a likelihood of success on the merits, in addition to establishing that the interests of the parties and the public weigh in his or her favor.").

Upon consideration of the foregoing, it is

ORDERED that PBFF's April 10, 2023, petition for extraordinary relief is DENIED; and it is further

ORDERED that PBFF's April 10, 2023, motion for a stay pending appeal is DENIED.

DATED: August 25, 2023                                    PER CURIAM.